RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0186P (6th Cir.)
File Name: 02a0186p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ALFONSO MACIAS, JR.,
     *Petitioner-Appellant,*

          *v.*                                   No. 00-2006

JOHN MAKOWSKI,
     *Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 98-60335—George C. Steeh, District Judge.

Argued: May 1, 2002

Decided and Filed: May 24, 2002

Before: SUHRHEINRICH and GILMAN, Circuit Judges;
HOOD, District Judge.[*]

_____

### COUNSEL

**ARGUED:** Debra A. Gutierrez, STATE APPELLATE
DEFENDER OFFICE, Detroit, Michigan, for Appellant.
Janet A. Van Cleve, OFFICE OF THE ATTORNEY

_____

[*] The Honorable Joseph M. Hood, United States District Judge for the
Eastern District of Kentucky, sitting by designation.

1

GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Valerie R. Newman, STATE APPELLATE DEFENDER OFFICE, Detroit, Michigan, for Appellant. Janet A. Van Cleve, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

————————

**OPINION**

————————

RONALD LEE GILMAN, Circuit Judge. Alfonso Macias, Jr. was convicted in state court of assault with intent to commit murder and for possession of a firearm. He was sentenced to between 10 and 20 years in prison for the assault and 2 additional years for unlawfully possessing the firearm. After his conviction and sentence were affirmed on direct appeal, Macias filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan, claiming that his due process rights were violated by prosecutorial misconduct. The district court denied the writ. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

### A.  Factual background

At approximately 3:00 a.m. on January 1, 1994, Christopher LaSalle parked his car at a gas station in Pontiac, Michigan. He had four passengers with him in the car. LaSalle exited to speak to his girlfriend, Angela Giglio, who was a passenger in a car that was parked in front of him. As he was standing next to this other car, a third car pulled into the gas station. At this point, LaSalle returned to his car, having been prompted to do so by one his friends. He then looked out of his driver's side window and saw that an individual was pointing a gun at him. The gunman pulled the trigger, but the gun misfired. Shortly thereafter a shot was fired into the driver's side of LaSalle's car. As LaSalle attempted to escape, the gunman fired a second gunshot into

objectively unreasonable. We therefore conclude that Macias's petition for a writ of habeas corpus should be denied.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

Third, we must decide "whether the remarks were deliberately or accidentally made." *Id*. Ruelas was named as a witness in defendant's notice of alibi dated two months before the trial began. In response, the prosecutor had filed an alibi rebuttal notice approximately five weeks before trial indicating that she was aware that Brenda Ruelas would be called by the defense as an alibi witness. Given that the prosecutor knew that Ruelas had come forward well in advance of trial, the statement during rebuttal closing argument that "she comes forth the day of trial or shortly before" was almost certainly a deliberate misstatement of fact.

Fourth, we must consider "whether the evidence against the defendant was strong." *Id*. Seven eyewitnesses identified Macias as the assailant who attempted to shoot LaSalle. Their testimony is credible because it was based upon a close-range encounter with the shooter. Moreover, three of the eyewitnesses, including the intended victim, knew Macias. Although the prosecution did not present any physical evidence to prove that Macias was the shooter, and Macias did have an alibi, the testimony against him was strong. This factor therefore weighs against Macias's claim.

In sum, two of the four factors of the *Carroll* test (the statements were misleading and were deliberate) weigh in favor of Macias's claim that the prosecutor's rebuttal closing argument violated his due process rights and two weigh against his claim (the statements were isolated and the evidence against him was strong). If this court were hearing the case on direct appeal, we might have concluded that the prosecutor's comments violated Macias's due process rights. But this case is before us on a petition for a writ of habeas corpus. So the relevant question is not whether the state court's decision was wrong, but whether it was an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 411 (2000). Given that the prosecutor's statements were isolated and the evidence against Macias was strong, the determination by the Michigan Court of Appeals that the comments did not violate Macias's due process rights was not

the car's roof. A third shot hit the car as LaSalle drove away from the gas station. Fortunately, no one was injured by the gunfire.

LaSalle originally identified the shooter as a Hispanic male known to him by the nickname "Bontay," with whom he had had a physical confrontation two months earlier. On January 3, 1994, LaSalle informed the police that the individual he knew as "Bontay" was named Alfonso Macias, Jr. LaSalle testified that an individual with whom he works had told him the alleged shooter's proper name.

On January 14, 1994, during a photo lineup, LaSalle identified Macias as the individual who had fired the gunshots at him. At trial, six other eyewitnesses also identified Macias as the shooter. Macias, however, presented evidence that he was not at the gas station at the time the shooting occurred. Specifically, Angela Moran testified that she was with Macias until approximately 1:10 a.m. that morning, at which time she dropped him off at the apartment where he was staying. Jennifer Mojica, a resident of the apartment, testified that Macias was still there when she went to sleep at approximately 1:30 a.m. Finally, Brenda Ruelas, Mojica's roommate, testified that she watched television movies with Macias "[f]or about two or three hours" after Macias arrived, which would overlap the incident at the gas station.

## B.  Procedural background

On June 22, 1994, a jury convicted Macias of assault with intent to commit murder, in violation of M.C.L. 750.83, and for unlawfully possessing a firearm, in violation of M.C.L. 750.227b. On appeal, the Michigan Court of Appeals initially concluded that the prosecutor had improperly attacked the credibility of Macias's key alibi witness, Brenda Ruelas, "with argument unsupported by the evidence, including argument that was false." After noting that Macias's defense relied on Ruelas's credibility, and that the weight of the evidence against Macias was not overwhelming because "[t]here was significant contradiction" in the accounts of the eyewitnesses, the Court of Appeals determined that the "error

was not harmless beyond a reasonable doubt." It therefore reversed Macias's conviction and remanded the case for a new trial.

On appeal by the state, the Michigan Supreme Court remanded the case to the Court of Appeals for reconsideration in light of *People v. Mateo*, 453 Mich. 203 (1996). Although the Michigan Court of Appeals concluded that *Mateo* was irrelevant to Macias's appeal, a partially new panel of the court decided to reverse the earlier ruling by the prior panel. The Michigan Court of Appeals explained that it was "now convinced that the prosecutor's argument did not contain false or misleading statements of fact, but was a legitimate argument based on legitimate inferences drawn from [Ruelas's] testimony." One judge dissented, pointing out that "Ruelas was listed as an alibi witness in defendant's notice of alibi, dated April 24, 1994, two months before trial, and the prosecutor's statement that she did not come forth until trial was irrelevant, false or misleading at best."

Macias then filed a motion for reconsideration, arguing that the Michigan Court of Appeals had violated the law-of-the-case doctrine by reversing its earlier decision even though it had concluded that *Mateo* was irrelevant. On July 25, 1997, the Michigan Court of Appeals denied Macias's motion after determining that the Michigan Supreme Court had "left open the door to reconsidering whether there was error at all."

After the Michigan Supreme Court denied Macias's application for appeal, Macias filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan, arguing that the prosecutor's statements regarding Ruelas's testimony constituted prosecutorial misconduct. The district court subjected Macias's claim to the four-factor test outlined in *United States v. Carroll*, 26 F.3d 1380, 1385-87 (6th Cir. 1994), to determine whether the prosecutorial misconduct violated Macias's due process rights, and concluded that "none of the [four] factors weigh[s] in Petitioner's favor or demonstrate[s] that Petitioner's trial was fundamentally unfair." Moreover,

Evidence in the record, therefore, does not support the prosecutor's rebuttal closing argument. In fact, the prosecutor's statements regarding when Ruelas came forward with her alibi information is directly contradicted by such evidence. As the original panel of the Michigan Court of Appeals pointed out, Ruelas "was named in defendant's notice of alibi dated April 21, 1994, and filed in the county clerk's office on May 9, 1994," approximately two months before Ruelas's trial testimony was taken on June 21, 1994. Macias's counsel unfortunately failed to point this key fact out to the state trial court. In sum, we conclude that the prosecutor's statements regarding Ruelas's testimony were based upon purported facts that were not in evidence and were therefore improper.

Because we have concluded that the prosecutor's statements were improper, we must now apply the four factors of the *Carroll* test to determine whether the prosecutorial misconduct was sufficiently flagrant to violate Macias's due process rights. First, we must determine "whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant." *Carter*, 236 F.3d at 783.

The prosecutor's statements, as noted above, were not based upon evidence in the record. In particular, the prosecutor's comment that Ruelas did not come forward until "the day of trial or shortly before" is directly contradicted by the notice of alibi that was dated two months prior to trial. The statement was thus clearly misleading. Because Ruelas's testimony was central to Macias's defense, the prosecutor's misleading statements regarding her testimony were also prejudicial.

Second, we must determine "whether the conduct or remarks were isolated or extensive." *Id*. The prosecutor's statement took place during rebuttal closing argument, and Macias does not contend that the prosecutor acted inappropriately at any other point during the trial. Because the comments were isolated, this factor does not weigh in Macias's favor.

evidence and are prejudicial." *Byrd*, 209 F.3d at 535 (internal quotation marks omitted).

The prosecutor's statements during rebuttal closing argument made factual claims about (1) when Ruelas came forward with an alibi for Macias, and (2) whether she reported the relevant information to the police department. Although it appears from the record that defense counsel objected only to the later of these factual claims, the government does not contend that Macias has waived his argument that the prosecutor's comments regarding when Ruelas came forward were improper.

While cross-examining Ruelas, the prosecutor did not ask Ruelas any questions regarding when she came forward with her alibi information. Nor did the prosecutor ask Ruelas whether she had reported her information to the police department. The closest the prosecutor came to asking Ruelas whether she had contacted the police department was during the following exchange:

Q. Did you discuss your testimony with anybody else other than the defendant?
A. No.
Q. You haven't talked to Jennifer Mojica?
A. Oh, yes, me and her talked about what happened.
Q. I'm sorry?
A. I said we talked about, you know, what's going on.
Q. Have you talked to Jennifer Moran? I mean Angela Moran?
A. No.

Ruelas's answer to the first question could possibly be construed as evidence that she did not speak with the police department regarding her alibi information. The series of followup questions, however, clearly indicates that this line of questioning was intended to determine if Ruelas had discussed her alibi testimony with any of her or Macias's friends, not with the police.

the district court concluded that even if the remarks were improper, they constituted harmless error because Macias was identified as the shooter by seven eyewitnesses. Macias then filed a motion for reconsideration of the district court's order, which the court denied. This timely appeal followed.

## II.   ANALYSIS

### A.   Standard of review

The Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), applies to Macias's case because he filed his habeas corpus petition pursuant to 28 U.S.C. § 2254 after the effective date of AEDPA. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). A federal court is authorized to grant a writ of habeas corpus to a person in custody pursuant to a state-court judgment, but only if the adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The Supreme Court has declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2000). In its discussion of the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A district court's denial of the writ is subject to de novo review. *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir. 1998).

## B.  Prosecutorial misconduct

During the prosecutor's rebuttal closing argument, Macias's counsel objected to the prosecutor's implication that he had "twist[ed]" the evidence.  After the state trial court admonished the prosecutor to "confine [her] remarks to . . . the facts that [she had] proven," the prosecutor nonetheless attacked the veracity of Brenda Ruelas, Macias's key alibi witness, with the following argument:

Ladies and gentlemen, you have seven eyewitnesses who said it's the defendant who did it.  You have one young lady [Brenda Ruelas] who had been drinking Boone's Farm, who isn't sure what she was watching, who says, "Yeah, we were there for two or three hours watching movies."

*Well, Brenda, where were you in January?  She said the end of January she had talked to the defendant.  Why didn't she go to the police then and say, "Hey, you've got the wrong guy"?*

Mr. Ribitwer: Your Honor, I'll object.  That's based upon facts not in evidence, that she even knew that the police had issued any warrants.  There is nothing to show that she knew that this man was charged or wanted for anything, if in fact he was.  She is making argument based upon facts not in evidence.  I object.

Ms. Davis: Your Honor, I think it's a reasonable inference. *She comes forth the day of trial.*

The Court: Overruled.

Ms. Davis: Thank you.

Ladies and gentlemen, *she comes forth the day of trial or shortly before* and says, not to the police but to someone else apparently, "You've got the wrong guy." Is that consistent with common sense?  Is that consistent with truth?  No, it is not.  If she knew that he wasn't there, why didn't she go to the police and tell them?

(Emphasis added.)  Macias contends that he is entitled to a writ of habeas corpus because the prosecutor's statements deprived him of his constitutional right to a fair trial and his

right to confront his accusers, as guaranteed by the Due Process Clause and the Sixth Amendment.

"In deciding whether prosecutorial misconduct mandates that habeas relief be granted, the Court must apply the harmless error standard." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997).  The relevant question is thus whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

This court has adopted a two-step approach for determining whether prosecutorial misconduct violates a defendant's due process rights.  *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001); *see Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (utilizing this test to evaluate a due process claim based upon prosecutorial misconduct raised in a post-AEDPA habeas petition).  First, we must consider whether the prosecutor's conduct and remarks were improper.  *Id*.  If we conclude that the remarks were improper, then we must apply the four-factor test set forth in *United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir. 1994), to determine "whether the impropriety was flagrant" and thus violated the defendant's due process rights.  *Carter*, 236 F.3d at 783.  The four factors are as follows: "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong." *Id*.

Before proceeding to the four factors of the *Carroll* test, we must first determine whether the prosecutor's statements were improper.  Although a prosecutor is allowed "to argue reasonable inferences from the evidence," *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000), he or she is not allowed to misstate the evidence.  *Carter*, 236 F.3d at 784.  It is thus "improper for a prosecutor, during closing arguments, to bring to the attention of the jury any purported facts that are not in