*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0428p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

VINCENT DOAN,

        *Petitioner-Appellant,*

    *v.*

HAROLD E. CARTER, Warden,

        *Respondent-Appellee.*

No. 07-3516

>

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 00-00727—Sandra S. Beckwith, Chief District Judge.

Argued: October 29, 2008

Decided and Filed: November 26, 2008

Before: SILER and McKEAGUE, Circuit Judges; LUDINGTON, District Judge.[*]

---

## COUNSEL

**ARGUED:** Kort W. Gatterdam, CARPENTER, LIPPS & LELAND, Columbus, Ohio, for Appellant. Michael D. Meuti, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** Kort W. Gatterdam, CARPENTER, LIPPS & LELAND, Columbus, Ohio, for Appellant. M. Scott Criss, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

---

## OPINION

---

    LUDINGTON, District Judge. A state-court jury convicted Vincent Doan of aggravated murder, with one death-penalty specification, and three counts of kidnapping. The court followed the recommendation of the jury and imposed a sentence of life imprisonment without the possibility of parole for the aggravated murder conviction and also imposed a nine-year prison term for the kidnapping convictions. In affirming his conviction, the Ohio Court of Appeals rejected Doan's claims that the trial court violated his due process rights by utilizing a jury instruction that allegedly reduced the State's burden of proof, and that the trial court violated Doan's Confrontation Clause rights by admitting hearsay statements indicating that Doan had physically abused or threatened the victim. *State v. Doan*, No. CA97-12-014, 2000 WL 221963 (Ohio Ct. App. Feb. 28, 2000).

---

[*]The Honorable Thomas L. Ludington, United States District Judge for the Eastern District of Michigan, sitting by designation.

Doan filed his 28 U.S.C. § 2254 habeas petition in federal district court in August 2000. Doan had a state postconviction proceeding pending at the time, but because of the Ohio courts' delay in acting on the petition, the federal district court excused Doan from exhausting the claims that had not been exhausted in Doan's direct appeal, including claims under *Brady v. Maryland*, 373 U.S. 83 (1963). The district court denied Doan's habeas petition, which alleged thirteen grounds for relief, but granted Doan a certificate of appealability as to whether the State violated his rights under *Brady*. *Doan v. Voorhies*, No. 1:00-CV-727, 2007 WL 894559 (S.D. Ohio Mar. 21, 2007). This Court expanded the certificate of appealability to include Doan's claims that the trial court violated his due process rights with a jury instruction that allegedly reduced the State's burden of proof, and that the trial court violated his Confrontation Clause rights by admitting inadmissible hearsay testimony. For the following reasons, we AFFIRM.

I

Doan was convicted of the kidnapping and murdering of his girlfriend, Clarissa Ann (Carrie) Culberson, who disappeared in the overnight hours of August 28-29, 1996. On the evening of August 28, 1996, Culberson was scheduled to play a game in a coed volleyball league. Witnesses saw Doan arrive in his car at the volleyball court and have a verbal dispute with Culberson, who refused to go home with him because she needed to drive her friends home, as they had been drinking. At approximately 11:30 p.m. that evening, after Culberson's game was over and she had returned home, a Culberson neighbor saw her leave in her red Honda CRX. Between 12:30 and 12:45 a.m. on August 29, 1996, Doan's neighbor, Billie Jo Brown, observed Doan chasing Culberson in Brown's front yard, with Culberson "asking for help." Brown observed the red CRX with the driver's door open. She saw Doan catch Culberson, punch her in the face, and tell her, "'I told you the next time I'd kill you, you fucking bitch.'" While Brown was attempting to wake her husband, she heard squealing tires; when she returned to the window, she observed that Culberson, Doan, and Culberson's car were gone.

At 3:15 a.m. on August 29, 2006, Doan appeared at the home of his half-brother, Tracey Baker. According to Tracey's ex-wife, Lori Baker, Doan was shirtless and had blood on his chest, arm, and jeans, and according to another witness, Vicki Watkins, Doan was "dirty," "grungy looking," and "distraught." At approximately 3:45 a.m., after Doan had showered, changed clothes, and conversed with Tracey, Doan and Tracey left in Tracey's truck, carrying with them several garbage bags and a gun. The men returned to Tracey's house at approximately 6:00 a.m. and attempted to clean up Doan's clothes and boots that he had left behind. Neither Culberson's body nor her Honda CRX was ever found.

At trial, multiple witnesses testified that, on many occasions in the months prior to Culberson's disappearance, Culberson had described to them physical abuse by Doan, and threats that Doan had made on her life and the lives of her family members. Witnesses testified that Culberson had told them that Doan had punched her, dragged her through a bedroom, smashed her face into a steering wheel, held her by the hair after kicking out the window of a car in which she was riding, and picked her up and slammed her against a car trunk.

II

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, placed "a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Doan's petition for a writ of habeas corpus may be granted only if he can show that the state court's adjudication of his claims on the merits:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. Conversely, "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A state court need not cite Supreme Court cases on point or even be aware of such cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).

"Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence." *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)). This review is conducted in light of the law as it existed at the time of the final state-court decision, *Teague v. Lane*, 489 U.S. 288, 310 (1989), unless an intervening decision of constitutional import announces a "watershed" rule of criminal law with implications for the fundamental fairness of the trial proceeding. *Caspari v. Bohlen*, 510 U.S. 383, 395 (1994) (citation omitted). This Court reviews the district court's legal conclusions de novo. *Greer v. Mitchell*, 264 F.3d 663, 671 (6th Cir. 2001).

A

In his habeas petition, Doan contends that an erroneous jury instruction that referred to a civil "greater weight of the evidence" standard deprived him of the right to have the State prove its case beyond a reasonable doubt. The trial court properly defined the "beyond a reasonable doubt" burden of proof by providing the jury with Ohio's statutory definition of reasonable doubt. *See* Ohio Rev. Code § 2901.05(D). However, in response to Doan's counsel's request for an instruction cautioning jurors about drawing an inference upon an inference, the trial court included the following ancillary instruction in its explanation of direct and circumstantial evidence:

> To infer or to make an inference is to reach a reasonable conclusion of fact which you may but you are not required to make from other facts which you find have been established by direct evidence. Whether an inference is made rests entirely with you. You may infer a fact or facts or reach a reasonable conclusion about a fact or facts only from other facts or circumstances that have been proved by the greater weight of the evidence, but you may not infer a fact or facts, or make inferences - - - or reach a conclusion about a fact or facts from a speculative or remote basis that has not been established by a greater weight of the evidence.

Tr. 3330-31, J.A. 907-08. During deliberations, and at the jury's request, the trial court re-read to the jury the ancillary instructions concerning direct and circumstantial evidence, including the erroneous instruction cautioning inferences. Although Doan's counsel objected to the instruction after the court re-read it to the jury, the trial court declined to correct the instruction, in order to avoid drawing the jury's attention to it.

"To warrant habeas relief, jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair." *Austin v. Bell*, 126 F.3d 843, 846-47 (6th Cir. 1997) (citing *Estelle v. McGuire*, 502 U.S. 62, 72 (1991), *Henderson v. Kibe*, 431 U.S. 145, 154 (1977), and *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986)). When a court makes an error in instructing the jury, the proper inquiry is "whether there is a reasonable likelihood that the jury" applied the instruction "in an unconstitutional manner." *Victor v. Nebraska*, 511 U.S. 1, 6 (1994) (citing *Estelle*, 502 U.S. at 72). However, when jury instructions do not require the government to prove each element of an offense beyond a reasonable doubt, structural error occurs, and a harmless error analysis is not required for a reviewing court to find a constitutional violation. *Sullivan v. Louisiana*, 508 U.S. 275 (1993).

Doan contends that the trial court's use of the erroneous ancillary instruction created a structural error under *Sullivan*. According to Doan, the erroneous instruction led the jury to reduce the government's burden of proof and allowed the government to prove each element of the crime by only a greater weight of the evidence. In addition, if the error was not structural, Doan contends that the error rose to a constitutional level, and was not harmless, contrary to the state court's holding.

In *Sullivan*, the Supreme Court emphasized that "[t]he prosecution bears the burden of proving all elements of the offense charged, and must persuade the factfinder beyond a reasonable doubt of the facts necessary to establish each of those elements." *Id.* at 277-78 (citations omitted). When the trial court in *Sullivan* instructed the jury on the definition of reasonable doubt, the court equated reasonable doubt to "substantial doubt," and required the jury to find "grave uncertainty" in order to acquit the defendant. *See State v. Sullivan*, 596 So.2d 177, 185 n.3 (La. 1992). The Supreme Court found that the defective reasonable doubt instruction violated the defendant's Fifth and Sixth Amendment rights, and was not subject to harmless-error analysis, because it "vitiate[d] all the jury's findings" and resulted in "consequences that are necessarily unquantifiable and indeterminate." *Sullivan*, 508 U.S. at 281-82.

Subsequent to *Sullivan*, the Supreme Court emphasized that "the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." *Victor*, 511 U.S. at 5. Instead, "taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury." *Id.* (quotation omitted). Thus, in *Victor*, the Court found that the trial court did not violate petitioner Victor's constitutional rights when an instruction that it provided to the jury equated reasonable doubt to substantial doubt, because the instruction further clarified that a reasonable doubt is substantial, "as distinguished from a doubt arising from mere possibility, from bare imagination, or from fanciful conjecture." *Id.* at 20.

In light of *Sullivan* and *Victor*, it cannot be said that the state-court decision affirming Doan's conviction "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Unlike *Sullivan*, where the trial court improperly defined the "beyond a reasonable doubt" burden of proof, at Doan's trial, the court properly defined the "beyond a reasonable doubt" burden of proof and only made an error in an ancillary instruction unconnected to the burden of proof. Moreover, the jury was specifically instructed that Doan must be acquitted if the State does not prove each element of the offense beyond a reasonable doubt. Tr. 3329-30, J.A. 906-07. The trial court did not provide the jury with a separate definition of "a greater weight of the evidence," and only referred to that standard in one instruction, repeated twice. In contrast, the trial court repeated the "beyond a reasonable doubt" standard of proof twenty-seven times.

Although Doan places great weight on the fact that the jury asked the court to repeat the erroneous instruction, the jury actually requested the trial court to repeat the ancillary instructions concerning direct and circumstantial evidence, which happened to include the erroneous instruction.

Such a circumstance lends meager support to a conclusion that the erroneous ancillary instruction led the jury to apply a "greater weight of the evidence" standard to each element of the offense.

Given that the erroneous instruction must be viewed in the context of the jury instructions as a whole, *Victor*, 511 U.S. at 22, there is "no reasonable likelihood" that the jurors who determined Doan's guilt disregarded all of the trial court's instructions regarding proof beyond a reasonable doubt, in order to convict Doan by an undefined "greater weight of the evidence" standard. *Id.*; *see also Estelle*, 502 U.S. at 72. Accordingly, we reject Doan's claim that the trial court violated his constitutional rights by depriving him of the right to have the State prove its case beyond a reasonable doubt.

B

Doan claims that the trial court violated his rights under the Confrontation Clause, U.S. Const. amend. VI, by allowing Culberson's friends and family to testify as to statements made to them by Culberson concerning alleged physical abuse by Doan. Doan contends that admission of the testimony violated his constitutional rights because the Supreme Court has held that testimonial hearsay evidence may not be admitted against a criminal defendant unless the defendant had a prior opportunity to cross-examine the declarant. *See Crawford v. Washington*, 541 U.S. 36, 58-59 (2004). Alternately, Doan contends that admission of the testimony violated his constitutional rights under *Ohio v. Roberts*, 448 U.S. 56, 66 (1980), because it did not fall within a "firmly rooted hearsay exception," or have "particularized guarantees of trustworthiness."

While Doan contends that *Crawford* should be applied retroactively to his habeas petition under *Teague v. Lane*, 489 U.S. 288 (1989), this Court has already determined that *Crawford*, as a "newly promulgated rule[] of criminal procedure," does not apply retroactively to cases on collateral review, under the *Teague* framework. *Dorchy v. Jones*, 398 F.3d 783, 788 (6th Cir. 2005). Accordingly, Doan must demonstrate that the state court misapplied Supreme Court precedent under *Roberts*.

Notwithstanding the fact that Doan must establish that the state court's decision was contrary to, or a misapplication of *Roberts*, Doan must also establish that the state court's decision was contrary to, or a misapplication of, *Crawford*. This is because AEDPA allows a writ of habeas corpus to issue on behalf "of a person in custody pursuant to the judgment of a State court only on the ground that he *is in custody in violation of the Constitution* or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added). This Court has previously explained that a showing that a state court misapplied *Roberts* is "a necessary, but not a sufficient, condition for habeas relief," because "[t]he goal of the great writ is not to correct the misapplication of overruled precedents." *Desai v. Booker*, 538 F.3d 424, 428, 430 (6th Cir. 2008) (quotations omitted).

In *Roberts*, the Supreme Court held that a statement made by an out-of-court declarant may satisfy the Confrontation Clause in one of two ways: The statement may either fall within a "firmly rooted hearsay exception" or have "particularized guarantees of trustworthiness." 448 U.S. at 66. On direct appeal, the state court found that each of the instances of testimony challenged by Doan was either admissible as an "excited utterance," not hearsay because it had not been admitted for the truth of the matter asserted, or its admission did not materially prejudice Doan's right to a fair trial. *State v. Doan*, 2000 WL 221963, at *10. When the federal district court denied Doan's habeas petition, it did not address the state court's analysis of Doan's Confrontation Clause claims or the applicability of *Roberts*. Instead, the district court sua sponte applied the "forfeiture by wrongdoing" doctrine, by which a defendant forfeits his Confrontation Clause rights when he is responsible for the out-of-court witness's unavailability. *Doan v. Voorhies*, 2007 WL 894559, at *17-18 (relying on *United States v. Garcia-Meza*, 403 F.3d 364, 370 (6th Cir. 2005)).

Subsequent to the date that the district court issued its opinion, the Supreme Court addressed the application of the forfeiture by wrongdoing doctrine to the admissibility of hearsay statements of a murder victim in a defendant's trial for murder. In *Giles v. California*, - - - U.S. - - - - , 128 S. Ct. 2678, 2682 (2008), the Supreme Court held that the Confrontation Clause does not contain an exception "permit[ting] the use of a witness's unconfronted testimony if a judge finds . . . that the defendant committed a wrongful act that rendered the witness unavailable to testify at trial." *Id.* The Court reasoned that under the common law, "the exception applied only when the defendant engaged in conduct *designed* to prevent the witness from testifying." *Id.* at 2683 (emphasis in original).

In light of *Giles*, the district court's analysis cannot justify denial of Doan's habeas petition. The district court explicitly stated that "for the statements to be admissible under this exception, the prosecution need *only* prove by a preponderance of the evidence that the defendant is responsible for the declarant's unavailability." *Doan v. Voorhies*, 2007 WL 894559, at \*17-18 (emphasis added). The district court did not analyze whether Doan "engaged in conduct *designed* to prevent the witness from testifying." *See Giles*, 128 S. Ct. at 2683 (emphasis in original). However, the district court's ultimate conclusion that Doan is not entitled to habeas relief based on claimed violations of the Confrontation Clause is correct because Doan has not established that he is being held in violation of current Supreme Court precedent.

Under current Supreme Court precedent, the majority of the statements that Doan alleges were admitted in violation of the Confrontation Clause do not raise Confrontation Clause issues because they are not testimonial. In *Crawford*, the Court found "testimonial" hearsay included "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." 541 U.S. at 68. Subsequently, in *Davis v. Washington*, 547 U.S. 813, 822 (2006), the Supreme Court found that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency."

Doan contends that *Crawford* and *Davis* stand for the rule that hearsay statements are only nontestimonial, such that the Confrontation Clause does not apply, when they involve an ongoing emergency. We disagree with Doan's narrow characterization of nontestimonial statements. In *Crawford*, the Supreme Court emphasized that it was not providing a "comprehensive definition" of "testimonial." 541 U.S. at 68. Moreover, in *Giles*, albeit in dicta, the Supreme Court specifically provided that "[s]tatements to friends and neighbors about abuse and intimidation, and statements to physicians in the course of receiving treatment would be excluded, if at all, only by hearsay rules," because they are not testimonial within the meaning of the Confrontation Clause. 128 S. Ct. at 2693-94; *see also Crawford*, 541 U.S. at 51 (stating that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not"). Consistent with *Giles*, *Crawford*, and *Davis*, we find that Culberson's "statements to friends and neighbors about abuse and intimidation" allegedly inflicted by Doan are nontestimonial statements and are not subject to the Confrontation Clause.

Doan only describes one instance of admitted testimony which could possibly be considered testimonial hearsay. The State presented testimony that Culberson filed a charge affidavit against Doan for hitting her with a space heater on the morning of July 28, 1996, and that the affidavit was filed several hours after the event allegedly occurred. However, even if this Court found that the affidavit was both inadmissible hearsay and testimonial, admission of the affidavit was harmless error because Doan has not shown that the error had "substantial and injurious effect in or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Wilson v. Mitchell*, 498 F.3d 491, 502-04 (6th Cir. 2007) (explaining that *Brecht* sets forth the correct standard to be applied upon AEDPA review, in light of *Fry v. Pliler*, - - - U.S. - - - -, 127 S. Ct. 2321 (2007)).

To determine the effect of an error, the question to be answered is "whether the guilty verdict actually rendered in this trial was surely unattributable to that error." *Sullivan*, 508 U.S. at 279.

In Doan's case, the jury's guilty verdict is "surely unattributable" to the admission of Culberson's affidavit, even if it was inadmissible testimonial hearsay, because the affidavit was merely cumulative of other evidence admitted against Doan. As the state court of appeals noted:

> Culberson told [Doan], in Debbie Culberson's presence, almost immediately after the incident that [Doan] was only concerned about getting in trouble and was making up a story . . . That testimony, combined with Debbie Culberson's personal witnessing of Culberson's injuries, conveys the gist of the event, i.e., [Doan] caused Culberson, by his violence, to bleed from her head. In addition, [Doan's] ludicrous explanation of her injury, admissible as a statement of a party-opponent, that Culberson 'had fallen on a pole' is more evidence of [Doan] protecting himself.

*State v. Doan*, 2000 WL 221963, at *10. Accordingly, the Court rejects Doan's claims for habeas relief based on the admission of alleged hearsay testimony because Doan has not shown that he is in custody in violation of the Constitution, as expounded by *Crawford*, *Davis*, or *Giles*.

C

Doan claims that the prosecution violated his due process rights by failing to provide him with exculpatory evidence as mandated by *Brady v. Maryland*, 373 U.S. 83 (1963). *Brady* requires the prosecution to disclose exculpatory and impeachment evidence that is "material either to guilt or to punishment." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (quoting *Brady*, 373 U.S. at 87). A *Brady* violation includes three elements: (1) the evidence "must be favorable to the accused, either because it is exculpatory, or because it is impeaching"; (2) the "evidence must have been suppressed by the State, either willfully or inadvertently"; and (3) "prejudice must have ensued." *Strickler*, 527 U.S. at 281-82. "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "A 'reasonable probability' of a different result is . . . shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting *Bagley*, 473 U.S. at 678). In reviewing for materiality, a court considers the cumulative effect of the undisclosed evidence, not each item in isolation. *Id.* at 436. Once it has been found that "there is a reasonable probability that . . . the result of the proceeding would have been different" under *Bagley*, 473 U.S. at 682, an error "cannot subsequently be found harmless under *Brecht*." *Kyles*, 514 U.S. at 436.

Doan argues that the State violated his constitutional rights by withholding seven pieces, or categories, of evidence from Doan at trial. First, Doan argues that the prosecution failed to disclose several pieces of evidence related to Mitchell Epperson, a jailhouse informant who testified as to incriminating statements that Doan allegedly made to him while the two men were incarcerated at the same detention facility. Epperson testified that he did not receive any consideration or time off his sentence for providing testimony against Doan. However, according to Doan, the prosecution had offered Epperson reward money in exchange for his testimony.

At the time of Doan's trial, a private reward had been offered in connection with Culberson's disappearance. Epperson expressed interest in the reward on several occasions, and the State indicated to him that he would be eligible to receive it. Doan's trial counsel knew that the reward had been offered, and had even asked to have reward posters removed from around the town before the trial started. Accordingly, the prosecutor's "failure to disclose" evidence of the reward cannot form the basis of a *Brady* violation. *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000) (finding that "there is no *Brady* violation if the defendant knew or should have known the essential facts

permitting him to take advantage of the information in question, or if the information was available to him from another source") (citations omitted). Based on his knowledge of the reward, Doan's trial counsel could have asked Epperson if the potential reward had motivated his testimony in any way.

Doan also alleges that the prosecution failed to disclose that it had "rewarded" Epperson by requesting that other jurisdictions not arrest Epperson on outstanding warrants, by having the prosecutor's investigator testify at Epperson's sentencing hearing, and by releasing Epperson early from jail. First, with respect to the State's request that other jurisdictions not arrest Epperson, Epperson was not aware of this request, thus, the prosecution could not have made the request in exchange for Epperson's testimony. Second, although a prosecutor's investigator testified at Epperson's hearing, Doan does not advance any evidence to suggest that the testimony was favorable to Epperson, or that there was any agreement between the prosecutor's office and Epperson regarding the testimony. Third, Doan merely speculates, and does not provide any evidence, that Epperson was released from jail early in exchange for his testimony, rather than because of a more typical circumstance such as overcrowding or good behavior.

Even if the Court found that this evidence was wrongly withheld by the prosecution, it does not affect the analysis of the cumulative effect of the evidence on the trial. The jury's assessment of Epperson's credibility is not likely to have been affected by this potentially impeaching evidence because Epperson had already been impeached on his extensive criminal record and drug problems.

The second category of evidence that Doan argues that the prosecution failed to disclose involves several pieces of evidence related to Lori Baker's testimony that Doan was smeared with blood when he appeared at the Bakers' house at approximately 3:15 a.m. on August 29, 1996. During interviews with investigators and the assistant prosecutor on November 7, 1996, and on November 12, 1996, Lori did not state that Doan was covered in blood when he appeared at her house. Lori had also made a statement to a detective indicating that she did not know anything about Culberson's disappearance, and a statement to the wife of a sheriff's deputy that Doan had been at her house with blood on him. Thus, Doan contends that "the prosecution failed to disclose a series of self-contradictory statements [Lori] made prior to her trial testimony she gave against Doan."

Even if some evidence of Lori's inconsistent statements was withheld by the prosecution, the withholding does not affect the analysis of the cumulative effect of the evidence on the trial. The jury's assessment of Lori's credibility is not likely to have been affected by this potentially impeaching evidence because Lori had already testified to making several contradictory statements concerning whether she saw Doan covered in blood. On direct examination, Lori admitted that she had previously given Doan's trial counsel a false statement under oath concerning her knowledge of Culberson's disappearance. On cross-examination, Lori admitted that she had lied to the detective. Lori also admitted that she lied in a statement to the assistant prosecutor when she told him that she had not said to another person that she had not seen Doan covered in blood. Finally, Lori admitted to lying to the assistant prosecutor in late October or early November of 1996.

The third piece of evidence that Doan argues that the prosecution failed to disclose is evidence that the State promised witnesses Lori Baker and Vicki Watkins that it would not prosecute them if they implicated Doan in Culberson's murder. Lori and Watkins met with assistant prosecutor Moyer and Detective Edwards on November 7, 1996. According to Detective Edward's notes, Moyer "reassured Lori and [Watkins] that they would not be charged unless they flat-out lied to us . . . Moyer then pointed out a couple of lies that Lori had already told and she admitted same and that she wouldn't hold anything back in the future." While the prosecution must disclose that it has promised a witness that he or she will not be prosecuted in exchange for providing testimony, *Giglio v. United States*, 405 U.S. 150, 154 (1972), the prosecutor in this case did not make such a

promise to Lori or Watkins. Moyer merely admonished Lori and Watkins that they needed to be truthful. Thus, this evidence is not evidence that the prosecution had to disclose under *Brady*.

Fourth, Doan argues that the prosecution failed to disclose evidence that Culberson's neighbor, Billie Jo Brown, had been unable to positively identify Doan from a photo-array as the man she saw assaulting Culberson in her yard, and a statement by Brown, which was inconsistent with her trial testimony as to what type of clothing Culberson's attacker was wearing. While those statements could have been used by the defense to impeach Brown, any error in withholding the statements was insignificant. A witness for the defense, Bonnie Davis, corroborated Brown's testimony that Doan and Culberson were arguing outside Brown's house. Doan's argument that Davis's testimony was actually inconsistent with Brown's because Davis testified that Doan and Culberson went in separate directions after the argument is not persuasive because both witnesses placed Doan and Culberson having an argument in Brown's yard. Accordingly, any error in disclosing the evidence did not contribute to the cumulative effect of wrongfully withheld evidence because it would not have had a significant impact on the jury's assessment of Brown's credibility.

Fifth, Doan argues that the prosecution failed to disclose evidence that Culberson had confided to a friend, Mandy Bogan, that she was considering leaving Blanchester. According to Bogan's statement, Culberson had once confided to her that she had to get away from Doan because of his abuse and that "maybe the only way out was to just leave everything behind and start over." While this evidence may have supported the defense theory that Culberson left Blanchester on her own, this theory was not plausible. Culberson had no money and had recently rejected offers from her mother and her employer to pay for her relocation. Additionally, Culberson had expressly stated that she did not want to leave Blanchester, and had just enrolled in a nearby nursing school. Accordingly, even if Bogan's statement had been disclosed to the jury, it would not have had a significant effect on the jury.

Sixth, Doan argues that the prosecution wrongfully failed to disclose statements from two witnesses who claimed to have seen a man and woman generally fitting Doan and Culberson's descriptions at times that Culberson was already dead according to the prosecution's theory of the case. The first statement that the prosecution did not disclose was a statement from Christa Lynn Pendleton which indicated, according to Doan, that:

> [A]t the time Doan was supposedly covered in blood at his brother's house, Pendleton saw two people walking on the left hand side of the road far from Baker's house. Pendleton described the pair as a woman wearing a dark long-sleeved shirt, light colored shorts and long brown hair. The man was wearing a baseball hat and a black shirt. She estimated he was five feet, eleven inches tall and weighed 175-180 pounds.

The second statement that the prosecution did not disclose was a statement from Karrie Donovan, which indicated, according to Doan, that Donovan "was on her way home Friday morning, August 30, 1996, between one and three in the morning, on Hunt Road, when she saw a man and a woman at a junkyard. The woman was slender, wore shorts and had long dark hair. The man was 'medium build.'" We agree with the district court's analysis of these two statements:

> The jury likely would not have found it plausible that two women, who just happen to be friends, would have each seen a woman matching Culberson's description on successive nights, both times with a man in apparently remote areas near Blanchester, immediately after she disappeared. Furthermore, since the jury obviously rejected the testimony of defense witnesses who claimed to have definitely seen Culberson alive after August 29, it is not likely that the jury would have credited the more general descriptions proffered by Pendleton and Donovan.

Moreover, Donovan's statement would have been at least as inculpatory as it was exculpatory, since it potentially placed Petitioner and Culberson at or near Petitioner's father's junkyard, which is on Hunt Road, where the police conducted a search for Culberson's body.

*Doan v. Voorhies*, 2007 WL 894559, at *13. Moreover, Doan's father testified that Doan was asleep at his house at the time of Pendleton's description, thus, "the jury was unlikely to conclude that an hour later he was awake and walking along the road with Culberson." *Id.* at *12. And finally, "any evidence that tended to place [Doan] with Culberson that late on the night she disappeared would not have been helpful to his defense, particularly in light of the fact that the following day, [Doan] was denying that he had seen Culberson after 12:30 a.m. on August 29." *Id.* In sum, Donovan and Pendleton's statements would have been just as inculpatory as exculpatory, and would not have had a significant effect on the jury.

Seventh, and finally, Doan argues that the prosecution was required to disclose that the State hypnotized Vicki Watkins to refresh her memory and that the State performed a voice stress analysis on Watkins. Doan argues that it would have been useful to impeach Watkins with evidence that her testimony may have been the product of hypnosis, rather than her actual memory of the events. While this may be true, it has already been discussed that Watkins had been impeached based on her prior inconsistent statements to the police and her failure to come forward earlier with her evidence. Accordingly, the fact of the hypnosis would not have had a significant effect on the jury.

Doan also argues that statements that Watkins made during the hypnosis session could have been used to impeach her. However, these statements concerned the location of Doan's tattoo and a statement that she thought that her discussion with her sister, Lori Baker, about "parting [Culberson] out" was completely "harebrained." These statements would not have added impeachment value. With respect to results of the voice stress analysis, it cannot be said that this evidence has impeachment value, because under Ohio law, the results cannot not be used, not even for impeachment purposes, unless both sides agree to their use. *State v. Doan*, No. CA2001-09-030, 2002 WL 1396874, at *6 (Ohio Ct. App. June 28, 2002).

In reviewing the evidence that the prosecution did not disclose for materiality, the Court has considered the cumulative effect of the evidence. *Kyles*, 514 U.S. at 434. Considering the fact that the witnesses to which the undisclosed evidence pertained had already been impeached by the defense, and that much of the evidence was just as inculpatory as exculpatory, the cumulative effect of the evidence indicates that the undisclosed evidence was not material. Doan has not shown that there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682. Accordingly, the Court rejects Doan's claims for habeas relief based on *Brady* violations.

AFFIRMED.