NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0433n.06

No. 09-1796

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Apr 20, 2012*

LEONARD GREEN, Clerk

FRANK RODRIGUEZ,                          )
                                          )
          Petitioner-Appellant,           )
                                          )
v.                                        )   ON APPEAL FROM THE
                                          )   UNITED STATES DISTRICT
KURT JONES, Warden,                       )   COURT FOR THE EASTERN
                                          )   DISTRICT OF MICHIGAN
          Respondent-Appellee.            )
                                          )
                                          )
                                          )

Before:  BOGGS and GIBBONS, Circuit Judges; RUSSELL, Senior District Judge.[*]

RUSSELL, Senior District Judge: Petitioner-Appellant Frank Rodriguez ("Rodriguez")

appeals the district court's dismissal of his writ of habeas corpus brought under 28 U.S.C. § 2254.

This petition for habeas relief arises out of Rodriguez's 1997 conviction on four cocaine-related

charges in Michigan state court. He argues that the prosecutor made prejudicial remarks during her

opening and closing arguments, the court gave a defective jury instruction on the aggregation of

cocaine for the conspiracy charge, which violated his constitutional rights, and the conspiracy

conviction implicated his rights under the Double Jeopardy Clause. The district court was

unpersuaded by these claims. Finding no error below, we affirm that decision.

_____

[*] The Honorable Thomas B. Russell, United States Senior District Judge for the Western
District of Kentucky, sitting by designation.

# I

Rodriguez and co-defendant Tico Porter were jointly tried in Michigan in the Oakland County Circuit Court. The five-count grand jury indictment charged Rodriguez with conspiracy to possess with intent to deliver 650 or more grams of cocaine, possession with intent to deliver 50 to 244 grams of cocaine, possession with the intent to deliver less than 50 grams of cocaine, and two counts of delivery of less than 50 grams of cocaine. In its opinion, the Michigan Court of Appeals recited the facts surrounding Rodriguez's criminal conviction:

> Defendants' convictions arise from their alleged involvement in sales of cocaine in Waterford Township and Pontiac from approximately September 1990 to March 1994. In 1988, the Waterford Police Department received information that Rodriguez was selling cocaine in area bars. In 1989 and 1990, the police conducted surveillance of Rodriguez' activities. On September 28, 1990, the police arrested Rodriguez for driving while his operator's license was suspended and, in a search incident to the arrest, found cocaine; Rodriguez was charged with possession with intent to deliver less than fifty grams of cocaine. In December 1992, Rodriguez pleaded guilty to that charge and was sentenced to lifetime probation.

> In the interim, in April 1992, the Waterford Police, in conjunction with the Oakland County Sheriff's Department and the Narcotics Enforcement Team, began a larger investigation into defendants' drug dealing on the basis of information that the size and scope of their organization had grown. The police resumed surveillance, during which they observed Porter present with Rodriguez while Rodriguez was dealing cocaine. In July 1993, a grand jury convened and, in March 1994, returned an indictment charging defendants. Also named in the indictment was a coconspirator, Paul Potter, who pleaded guilty to a lesser charge in exchange for his testimony against defendants.

> The indictment alleged that both defendants, Potter, "and others both known and unknown to the Grand Jury" participated in a conspiracy beginning about September 1990 and continuing until March 1994, in which Rodriguez purchased cocaine in quantities ranging from one ounce to one kilogram and that Porter and Potter aided Rodriguez in the transporting, storing, weighing, and packaging of the cocaine that was sold in smaller amounts in Oakland County during this period. The indictment also charged defendants and Potter each with possession with intent to deliver more than 650 grams of a mixture containing cocaine in November 1991 and charged Rodriguez with two counts of delivering less than fifty grams of a mixture containing

cocaine that involved transactions on August 13, 1991, and September 10, 1991, and one count of possession with intent to deliver less than fifty grams of a mixture containing cocaine that involved a transaction on December 17, 1991. Following a preliminary examination, defendants were bound over on all charges.

*People v. Rodriguez*, 650 N.W.2d 96, 101-02 (Mich. Ct. App. 2002). On November 4, 1997, after a five-week trial, a jury found Rodriguez guilty on all counts, save the charge of possession with the intent to deliver less than 50 grams. His punishment for the convictions on these four charges included sentences of life imprisonment, 10 to 30 years, and two sentences of 2 to 30 years.[1]

After exhausting his state-court remedies, Rodriguez filed a habeas petition under 28 U.S.C. § 2254, raising nineteen claims of error. The district court found Rodriguez's claims without merit and denied his petition for relief. Still, it issued a certificate of appealability for his claims that "the Double Jeopardy Clause was violated, that the jury instruction on aggregation was defective, and that the prosecutor's remarks during her opening statement and closing arguments require reversal." *Rodriguez v. Jones*, 625 F. Supp. 2d 552, 570 (E.D. Mich. 2009). The district court denied a certificate of appealability on the remaining errors he alleged. Pursuant to 28 U.S.C. § 2253(c)(1)(A), we have jurisdiction to review these three issues.

**II**

## A. Standard of review

On an appeal from the denial of a writ of habeas corpus, a district court's legal conclusions are reviewed *de novo* and factual findings are generally reviewed for clear error. *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008) (citations omitted). In cases where the district court does not make independent findings of fact and instead relies on transcripts from the state trial court,

---

[1] During the pendency of this appeal, Rodriguez's sentence was commuted and he has since been paroled. He continues this action seeking relief from the current terms of his parole.

factual findings are reviewed *de novo*. *Carter v. Mitchell*, 443 F.3d 517, 524 (6th Cir. 2006) (citing

*Bugh v. Mitchell*, 329 F.3d 496, 500 (6th Cir. 2003)).

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs our deferential

review of decisions rendered by a state's courts. *Id*. A federal court may not issue a writ for habeas

relief unless the state court decision "'was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States; or resulted

in a decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding.'" *Girts v. Yanai*, 501 F.3d 743, 752 (6th Cir. 2007) (quoting

28 U.S.C. § 2254(d)(1)-(2)).

A state decision is "contrary to" clearly established federal law where "the state court arrives

at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state

court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable

facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000); *accord Harris*, 526 F.3d at 909. A state

decision represents an "unreasonable application" of clearly established federal law "when the state

court correctly identified the correct legal principle from Supreme Court precedent but unreasonably

applied that principle to the facts of the case before it." *Dennis v. Mitchell*, 354 F.3d 511, 517 (6th

Cir. 2003) (citing *Williams*, 529 U.S. at 412-13). "The proper inquiry for the 'unreasonable

application' analysis is whether the state court decision was objectively unreasonable and not simply

erroneous or incorrect." *Keith v. Mitchell*, 455 F.3d 662, 669 (6th Cir. 2006) (citing *Williams*, 529

U.S. at 409-11). In either case, "clearly established federal law" extends only to the express holdings

of the Supreme Court. *Harris*, 526 F.3d at 910 (citing *Keith*, 455 F.3d at 669).

## B.  Prosecutorial misconduct

Rodriguez's claim of prosecutorial misconduct centers on three comments the prosecutor made during the trial.  In her opening, when describing what was required of the jury at trial, the prosecutor asked its members "to confirm" the grand jury's indictment.  The trial judge admonished the jury against considering the indictment as evidence after Rodriguez's co-defendant objected to the remark.  During the prosecutor's closing, she said the defendants were "nowhere near innocent."  She also spoke openly about her past dealings with Rodriguez's counsel and insinuated that Rodriguez's decision to stand trial meant he was a prominent figure in the hierarchy of the drug conspiracy.  His counsel did not object to either statement.

Rodriguez urges reversal of his conviction because the prosecutor's comments poisoned the criminal proceeding and misled the jury about their role and the appropriate burden of proof.  He suggests the comments were both improper and extensive, which indicates a conscious scheme by the prosecutor to insert the prejudicial remarks.  Rodriguez argues that the prosecutor's actions were not harmless error and require overturning his conviction.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004).  We have limited the impact of prosecutorial misconduct in the context of habeas petitions:

> To be cognizable, the misconduct must have so infected the trial with unfairness as to make the resulting conviction a denial of due process.  Even if the prosecutor's conduct was improper or even universally condemned, we can provide relief only if the statements were so flagrant as to render the entire trial fundamentally unfair.

*Id*. (quoting *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  Furthermore, "[i]n deciding whether prosecutorial misconduct mandates that habeas relief be granted, the Court must apply the

harmless error standard." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citing *Eberhardt v. Bordenkircher*, 605 F.2d 275 (6th Cir. 1979)).

The two-step process in determining whether the prosecutor's statements violated a defendant's due process rights begins with the question of whether the statements were improper. *Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002). If so, then the flagrancy of the remarks is measured through four factors: "(1) the likelihood that the remarks would mislead the jury or prejudice the accused, (2) whether the remarks were isolated or extensive, (3) whether the remarks were deliberately or accidentally presented to the jury, and (4) whether other evidence against the defendant was substantial." *Bowling*, 344 F.3d at 512-13. The deferential standard of AEDPA makes the burden on the petitioner even greater since "the relevant question is not whether the state court's decision was wrong, but whether it was an unreasonable application of clearly established federal law." *Macias*, 291 F.3d at 454; *accord Bowling*, 344 F.3d at 513.

The prosecutor's statement in her opening about the jury confirming the grand jury's indictment does not justify reversal of Rodriguez's conviction. The trial judge sustained the defense counsel's objection and directed the jury that the grand jury's findings were not evidence of Rodriguez's guilt. "Ordinarily, a court should not overturn a criminal conviction on the basis of a prosecutor's comments alone, especially where the district court has given the jury an instruction that may cure the error." *United States v. Carter*, 236 F.3d 777, 787 (6th Cir. 2001); *accord Smith v. Yukins*, 129 F. App'x 251, 253-54 (6th Cir. 2005). The trial judge's admonishment protected Rodriguez's constitutional rights, and he was not prejudiced by this statement.

Similarly, the prosecutor's remark that Rodriguez was "nowhere near innocent" is unremarkable in light of the judge's pre-deliberation instructions. Prosecutors are not permitted to

offer their own opinion on a defendant's guilt or innocence. *Hall v. Vasbinder*, 563 F.3d 222, 235 (6th Cir. 2009) (citation omitted). Yet, the trial judge emphasized in the jury instructions that the defendants were presumed to be innocent and that the state carried the burden of showing the defendants' guilt beyond a reasonable doubt. He further reminded the jury that the attorneys' opening and closing arguments were not evidence to be considered when reaching their decision. Such instructions at the end of trial have proved sufficient in the past to innoculate a trial from reversal because of potential prosecutorial misstatements. *See Smith v. Jones*, 326 F. App'x 324, 328-29 (6th Cir. 2009) (judge's limiting instructions that the attorneys' statements were not evidence was adequate to ensure the jury was not confused about comments in a prosecutor's opening and closing arguments).

With respect to the comments on defense counsel's past attempts to make deals with the prosecutor's office, the Respondent contends this particular claim has been procedurally defaulted. The Respondent points out that the Michigan Court of Appeals found that Rodriguez failed to object at trial and therefore reviewed these comments under the plain-error standard. *See People v. Rodriguez*, 650 N.W.2d at 110. He also argues that any attempt by Rodriguez to claim ineffective assistance of counsel to overcome procedural default must fail because he cannot meet the burden set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

The Respondent is correct. A finding of procedural default is appropriate where "(1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim." *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (citing *Maupin v. Smith*,

785 F.2d 135, 138 (6th Cir. 1986)). We have held where a state appellate court concludes a defendant did not preserve an objection of prosecutorial misconduct and thus reviewed it for plain error, the objection is procedurally defaulted. *Lundgren v. Mitchell*, 440 F.3d 754, 777 (6th Cir. 2006); *see Taylor v. McKee*, 649 F.3d 446, 450-51 (6th Cir. 2011) (defendant's failure to object to walking in front of the jury while shackled and review by Michigan Court of Appeals for plain error meant claim was procedurally defaulted). In fact, we relied on this very decision by the Michigan Court of Appeals as an example of when a plain-error analysis by a state appellate court equates to procedural default for habeas review. *Jones*, 326 F. App'x at 327 (citing *People v. Rodriguez*, 650 N.W.2d at 110). Accordingly, procedural default bars this particular objection.

Rodriguez may avoid the consequences of this doctrine by either "'demonstrating cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrating that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Jells v. Mitchell*, 538 F.3d 478, 488 (6th Cir. 2008) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Belatedly, Rodriguez declares that his trial counsel was deficient for not objecting to these statements and it was this ineffective assistance that caused his default. *See id.* (a habeas petitioner may show ineffective assistance of counsel to avoid procedural default). To prevail under this theory, Rodriguez must prove his attorney's performance was deficient and he was prejudiced by that performance. *Strickland*, 466 U.S. at 687. The second half of *Strickland* requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Rodriguez cannot overcome this hurdle. Both the district court and the Michigan Court of Appeals described the evidence at trial against Rodriguez as "overwhelming." *Rodriguez v. Jones*,

625 F. Supp. 2d at 566; *People v. Rodriguez*, 650 N.W.2d at 112. We agree with that characterization. When considering the evidence arrayed against him, in combination with the strong presumption that defense counsel rendered adequate assistance, *Strickland*, 466 U.S. at 689, the omission of this statement would not have altered the jury's finding.

### C. Jury instructions

To support a charge of conspiracy to possess and deliver a controlled substance under Michigan law, the state must prove the conspirators had the specific intent to deliver at least the statutory minimum quantities charged in the indictment. *People v. Justice*, 562 N.W.2d 652, 659 (Mich. 1997). Rodriguez insists the instruction on aggregation directed the jury to add the separate transactions within the period of the conspiracy without first finding the requisite specific intent. He says the instruction relieved the state of the burden of proving the elements of the offense beyond a reasonable doubt.

"To warrant habeas relief because of incorrect jury instructions, [a petitioner] must show that the instructions, as a whole, were so infirm that they rendered the entire trial fundamentally unfair." *Murr v. United States*, 200 F.3d 895, 906 (6th Cir. 2000) (citing *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)). "When a court makes an error in instructing the jury, the proper inquiry is 'whether there is a reasonable likelihood that the jury' applied the instruction 'in an unconstitutional manner.'" *Doan v. Carter*, 548 F.3d 449, 455 (6th Cir. 2008) (quoting *Victor v. Nebraska*, 511 U.S. 1, 6 (1994)). An error in the instructions that has but a slight effect on the trial does not warrant the overturn of the jury's decision. *Murr*, 200 F.3d at 906 (citing *O'Neal v. McAninch*, 513 U.S. 432, 436-38 (1995)). Nevertheless, "when jury instructions do not require the government to prove each element of an offense beyond a reasonable doubt, structural error occurs, and a harmless error

analysis is not required for a reviewing court to find a constitutional violation." *Doan*, 548 F.3d at 455 (citing *Sullivan v. Louisiana*, 508 U.S. 275 (1993)).

The instruction on aggregation did not subvert the jury's role in deciding Rodriguez's specific intent. Before telling the jury about aggregation, the judge recited the elements of conspiracy and explained its characteristics. The trial judge addressed the requirement that the jury find the defendants specifically intended to join the conspiracy. He also described the need to find that each defendant intended to deliver the statutory amount. The trial court's instruction did not eliminate the jury's role in deciding whether to aggregate the amounts of cocaine during the conspiracy, nor did it shift the burden of proof to Rodriguez. The targeted language is not a basis to overturn his conviction.

Nor did the instruction on aggregation make the entire trial fundamentally unfair. Even assuming it was incorrect, there is little chance the instruction was applied in an unconstitutional manner. In describing the elements of a conspiracy, the trial judge cited the specific intent requirement for each actor on several occasions. He further told the jury that the State was required to prove, beyond a reasonable doubt, that each conspirator intended to deliver the statutory minimum. The language in the aggregation instruction, at worst, was made somewhat ambiguous by the judge's choice of words. Under such circumstances, the chances of a constitutional violation are low. *See Palmer v. Bagley*, 330 F. App'x 92, 102-03 (6th Cir. 2009) (where jury instruction was unclear and vaguely worded on the issue of specific intent, it was unlikely the jury applied it in an unconstitutional manner).

### D. Double Jeopardy Clause

Rodriguez urges reversal because his conviction in 1992 for possession with intent to deliver less than 50 grams renders his 1997 conviction for the 650-gram conspiracy unconstitutional under the Double Jeopardy Clause. He argues these two proceedings represent successive prosecutions for the same offense and therefore violate this constitutional guarantee.

The Double Jeopardy Clause of the Constitution states no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. It precludes both successive punishments and successive prosecutions for the same criminal offense. *Murr*, 200 F.3d at 900. Successive prosecutions are "situations involving one prosecution and conviction, a lapse of time, and then a separate prosecution and conviction for the same criminal activity." *United States v. Ehle*, 640 F.3d 689, 693 (6th Cir. 2011). We customarily use the "same-elements" test set out in *Blockburger v. United States*, 284 U.S. 299 (1932), to measure whether a defendant has impermissibly endured successive prosecutions. *Palazzolo v. Gorcyca*, 244 F.3d 512, 519 (6th Cir. 2001). "'That test asks whether each offense contains an element not contained in the other. A defendant will be considered placed in double jeopardy only if every violation of one statute entails a violation of another.'" *Murr*, 200 F.3d at 900-01 (quoting *United States v. Forman*, 180 F.3d 766 (6th Cir. 1999)).

Rodriguez's concerns are unavailing. First, the Supreme Court has confronted and rejected this argument under similar circumstances. In *United States v. Felix*, 503 U.S. 378 (1992), it reviewed a double-jeopardy challenge by a defendant convicted of attempting to manufacture methamphetamine in 1987 and then convicted of conspiracy to manufacture methamphetamine in 1989. *Id*. at 380-83. The defendant's initial conviction arose out of his activities in Missouri and

the later conspiracy charge was pursued in Oklahoma after the defendant moved. *Id*. Even though the earlier conviction for attempted manufacture included evidence used to establish the later conspiracy, the Supreme Court rejected the defendant's double jeopardy arguments. *Id*. at 387-92. Instead, it found the two offenses were separate for double-jeopardy purposes and "a mere overlap in proof between two prosecutions does not establish a double jeopardy violation." *Id*. at 386, 391.

Second, the facts illustrate the 1992 possession conviction and the 1997 conspiracy conviction are separate and distinct offenses. The former arose out of a traffic stop where Rodriguez was arrested for not having an operator's license. In a search of his person and car subsequent to the arrest, officers discovered 2.28 grams of cocaine in Rodriguez's pocket and shoe. On the other hand, the gravamen of the conspiracy charge was an agreement between Rodriguez and others to possess and deliver more than 650 grams of cocaine. Neither the elements for these convictions nor their factual foundations warrant relief for a violation of the Double Jeopardy Clause. *See United States v. Dixon*, 509 U.S. 688, 696-97 (1993) (if the offenses each contain an element not present in the other, they are not the same offense and are not barred as successive prosecutions).

## CONCLUSION

For the foregoing reasons, the judgment of the district court of the Eastern District of Michigan is AFFIRMED.