HELENE N. WHITE, Circuit Judge,
dissenting.
Because I am unable to conclude that the Sandstrom[1] error was harmless, I respectfully dissent from sections IV and V of the majority opinion.
During Miller’s trial, the court instructed the jury with respect to first- and second-degree murder as follows:
The indictment in this case charges the defendant with the offense of murder in the first degree. This charge, however, embraces four distinct, felonious homicides, namely: Murder in the first degree; murder in the second degree; voluntary manslaughter; and involuntary manslaughter.
An individual commits murder in the first degree, as charged in this case, if he commits a willful, deliberate, malicious and premeditated killing.
For you to find the defendant guilty of murder in the first degree, the State must prove beyond a reasonable doubt:
(1) That the defendant unlawfully killed the alleged victim.
(2) That the killing was malicious.
(3) That the killing was willful. This means that the defendant must have intended to take the life of the alleged victim.
(4) That the killing was deliberate; that is, with cool purpose.
(5) That the killing was premeditated, premeditation being the principal element of this offense. This means that the intent to kill must have been formed previous to the act itself.
If you find from your consideration of all the evidence that the State has proven each of the elements of first degree murder beyond a reasonable doubt, then you should find the defendant guilty of first degree murder.
If on the other hand you find that the State has not proven each of the elements of first degree murder beyond a reasonable doubt, then you will proceed to inquire whether the defendant is guilty of the lesser included offense of murder in the second degree.
*702 An individual commits murder in the second degree if he commits a malicious killing. For you to find the defendant guilty of the lesser included offense of murder in the second degree, the State must prove beyond a reasonable doubt:
(1) That the defendant unlawfully killed the alleged victim.
(2) That the killing was malicious.
Malice is an essential ingredient of murder, and it may be either express or implied. Express malice is actual malice against the party slain. Implied malice is not malice against the slain, but malice in general, or that condition of mind which indicates a wicked, deprived and malignant spirit, and a heart regardless of social duty and fatally bent on mischief.

If the state proves beyond a reasonable doubt that a killing has occurred, it is presumed to be malicious unless rebutted by other facts and circumstances to the contrary.

The use of a deadly weapon by the party killing, when shown, raises a presumption of malice sufficient to sustain a charge of second degree murder, unless it is rebutted by other facts and circumstances to the contrary.

You should look to all the facts and circumstances developed by the evidence in this case to determine whether the State has proved beyond a reasonable doubt the existence of malice.
(Emphasis added).
The government concedes that the italicized instruction, which allowed the jury to presume the element of malice, is erroneous.[2] Miller sought post-conviction relief in the Tennessee Court of Criminal Appeals based on the Sandstrom error on three grounds: 1) there was no evidence of his ill will in general or specifically towards the victim; 2) evidence of intoxicants negated the specific intent of express malice; and 3) evidence of insanity raised a jury question about Miller’s specific intent. Miller v. State, 1999 WL 1046415, at *4 (Tenn.Crim.App. Nov. 19, 1999). That court rejected Miller’s arguments for the following reasons:
On the petitioner’s previous direct appeal to our state’s Supreme Court, that Court found “no evidence introduced by either the State or the defendant sufficient to raise a reasonable doubt as to defendant’s sanity, unless it be said that atrocious, brutal acts inflicted upon Standifer [the victim], in and of themselves, were sufficient to do so.” State v. Miller, 674 S.W.2d 279, 282 (Tenn. 1984). Further, the trial court approved the jury verdict rejecting intoxication as negating premeditation, and the Supreme Court found no reason to overturn that finding. See id. at 282-83. We are also not persuaded by the petitioner’s assertion regarding ill will. “Malice has been defined as an intent to do harm or cause injury to another,” Welch v. State, 836 S.W.2d 586, 591 (Tenn.Crim.App.1992), and the evidence clearly supports finding of such intent. The proof shows that the petitioner killed the victim by striking her twice with great force with a fire poker and indicates those blows were so hard they bent the poker. Prior to this, the petitioner had handled the victim with sufficient roughness to bruise her arms and legs. Further, the petitioner inflicted multiple lacerations of great force on the victim. The evidence clearly supports a finding of “ill will.”
Id. at *5.
Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the *703 pertinent question is whether the foregoing analysis by the Tennessee Court of Criminal Appeals was either contrary to, or an unreasonable application of, the Supreme Court’s harmless-error standard outlined in Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). See Wilson v. Mitchell, 498 F.3d 491, 503 (6th Cir.2007). “Under the ‘unreasonable application’ clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court’s decisions but unreasonably applies that principle to the facts of the prisoner’s case.” Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In this Circuit, a finding that the error had a substantial and injurious effect or influence in determining the jury’s verdict necessarily means that the state court unreasonably applied the harmless error standard. Wilson, 498 F.3d at 503. Additionally, “[e]ven if there is only grave doubt about whether a trial error of federal law has substantial and injurious effect or influence in determining the jury’s verdict, that error is not harmless.” Campbell v. Bradshaw, 674 F.3d 578, 596 (6th Cir.2012) (internal quotation and citations omitted). “To determine the effect of an error, the question to be answered is ‘whether the guilty verdict actually rendered in this trial was surely unattributable to that error.’ ” Doan v. Carter, 548 F.3d 449, 459 (6th Cir.2008) (quoting Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)).
I first note that although the Tennessee Court of Criminal Appeals correctly determined that Sandstrom errors are subject to harmless-error analysis, see Miller, 1999 WL 1046415, at *4, the court performed no such analysis. For Miller’s first two arguments, the court simply cited the reasoning of the Tennessee Supreme Court over a decade earlier with no discussion of harmlessness. With respect to Miller’s argument regarding ill will, the court utilized a sufficiency-of-the-evidenee analysis without considering whether the erroneous presumption had any effect on the jury’s verdict. We have previously rejected the contention that sufficient evidence as to a particular element automatically renders an erroneous jury instruction harmless. In Houston v. Dutton, notwithstanding the fact that the circumstantial evidence supported an inference of premeditation and deliberation, we explained:
The fact that the evidence was sufficient to allow a jury to convict, of course, does not end the matter. The judge’s instructions to the jury as to the law and how the evidence should be assessed are crucial to a fair trial. They should guide the jury’s deliberations and are not mere technicalities in our legal system. Errors in such matters may go to the heart of the question of guilt.
50 F.3d 381, 385 (6th Cir.1995).
The defendant in Houston stood trial in a Tennessee state court for the murder of a gas-station attendant during a robbery. The defendant claimed that the shooting was an accident that occurred when the defendant and victim wére both struggling for the gun. The court gave the same erroneous instruction at issue in this case. During closing argument, the prosecutor stated that:
[Ajnybody that goes down there and arm robs a human being with a deadly weapon and then shoots them in whatever fashion is guilty of First Degree Murder, of premeditated, malicious, deliberate, willful, unlawful premeditated murder.
The defendant was convicted of first-degree murder. On habeas review, we rejected the State’s contention that because the jury had independently found the ele *704 merits of premeditation, deliberation and willfulness, all elements inconsistent with accident, the Sandstrom error was harmless. Instead, we agreed with the defendant’s argument that:
[T]he malice instruction had the effect of telling the jury to presume that the killing was subjectively contemplated beforehand' — and thus that the killing was not accidental' — [which] utterly wiped out [the defendant’s] single and, on the evidence, substantial accident defense. Because accident would have negated not only malice but also willfulness, premeditation, and deliberation, removing the accident defense unconstitutionally left [the defendant] with no defense, and paved the way to a finding of all four mental elements.
Houston, 50 F.3d at 386.
We also had an opportunity to consider the harmlessness of a similar instruction in Caldwell v. Bell, 288 F.3d 838 (6th Cir. 2002). In Caldwell, the defendant confessed to shooting the victim but claimed he was provoked and “went crazy” because the victim made homosexual advances toward him and slapped whiskey into his eye. The jury was given an erroneous presumption-of-malice instruction that read, “[w]hen the defendant is shown to have used a deadly weapon, and death is clearly shown to have resulted from its use, it is a presumption of law that the killing was done maliciously, that is, with the malice necessary to support a conviction of murder in the second degree.” Id. at 843. During closing argument, the prosecutor stated with respect to malice that “not only does it come-can it come from the use of a weapon, ...” but that “[bjlowing away a human being ... [is] the definition, the embodiment of the word malice.” We concluded that erroneous instruction was not harmless because:
Once the jury was instructed to presume malice, it would have been ‘substantially swayed’ to reject the defense’s theory of the killing that there was adequate provocation to produce a verdict of manslaughter. This left it with only the prosecution’s theory of the killing: that it was first-degree murder. Thus, the instruction substantially and injuriously affected the verdict, resulting in prejudice to the petitioner.[3]
During his trial, Miller argued both that the State had not proven the element of premeditation and that the LSD that he ingested hours prior to the killing negated any intent to kill Standifer. In closing argument, the prosecutor stated:
When you talk about malice, what would it take? As the pathologist said, consistent with the jaw injury and the heart injury, what would it take for somebody to take a hammer that’s found near the clothes of the victim, to take this hammer and to drive a sharp object into a person’s body? What type of mind would that take? I don’t know. But I contend to you that it took the mind of an obsessed killer. David Earl Miller, not only has the grand jury indicted you for first-degree murder, but the evidence in this case clearly shows your guilt and you must suffer the consequences.
And, ladies and gentlemen, those are the factors that I ask you to look at very closely. And I’ve attempted to illustrate *705 to you the evidence as I see it in the case very fairly ... I think that’s what you’ll find the evidence to be. And that’s what we mean when we say premeditation, willful, deliberate, and malicious killing.
Although the prosecutor vigorously advocated for a first-degree murder conviction on the basis that Miller had the mind of an “obsessed killer,” Miller’s state of mind was a highly contested issue throughout the trial with considerable evidence supporting Miller’s defense of intoxication. After closing argument, the jury received its instructions. As in Houston, once the jury received the erroneous instruction it no longer had to consider whether the evidence demonstrated Miller had the mind of an obsessed killer. Rather, the jury could just presume that Miller’s state of mind encompassed the actual intent to harm Standifer or a “condition ... which indicates a wicked, deprived and malignant spirit, and a heart regardless of social duty and fatally bent on mischief.” In Caldwell we pointed out that:
[T]he prosecutor, just before the instruction was given, had just argued to the jury to convict for first degree murder because the use of a deadly weapon is the “embodiment of the word malice.” Hence most normal jurors would think that the use of a deadly weapon gives rise to the inference of intent to kill. At least it is unreasonable to think that some jurors did not believe that the use of a deadly weapon was equivalent to an intent to kill after listening to both the judge’s instructions and the prosecutor’s argument.
288 F.3d at 844 (emphasis added).
Similarly, because the prosecutor in this case intertwined the other elements of first-degree murder into his closing discussion of malice there is a strong likelihood that once the jury was told to presume malice from the killing itself and Miller’s use of a deadly weapon, it presumed the other elements of first-degree murder as well. In addition to preventing the jury from considering Miller’s argument that the State had not proven premeditation, with intent already presumed, the jury no longer needed to consider whether Miller lacked the capacity to form the requisite intent due to his intoxication. The presumption thus effectively foreclosed Miller’s primary defenses. Under these circumstances, I conclude that the Sandstrom error had a substantial and injurious effect on the jury’s verdict. For that reason, I would reverse the judgment of the district court and grant Miller’s habeas petition.

. Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

. This type of erroneous instruction is commonly referred to as a Sandstrom error.

. Although neither Houston or Caldwell required us to use the deferential standard of review in AEDPA, both cases were analyzed under the Brecht "substantial and injurious effect or influence” harmless error standard and thus are pertinent to our review here. See Fulcher v. Motley, 444 F.3d 791, 822 (6th Cir.2006) ("This Court has held that the Brecht standard survived the enactment of AEDPA”).